UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-2188(DSD/JJG)

Keith M. Burcar,

       Plaintiff,

v.                                                    **ORDER**

South Washington County
School District 833,

       Defendant.

    Thomas E. Marshall, Esq. and Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, MN 55402, counsel for plaintiff.

    John P. Edison, Esq., Michael J. Waldspurger, Esq. and Rupp, Anderson, Squires & Waldspurger, P.A., 527 Marquette Avenue South, Suite 1200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant South Washington County School District 833 (the District).  Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This employment dispute arises out of the 2011 termination of plaintiff Keith M. Burcar by the District.  At the time of his termination, Burcar was employed as an assistant principal at Woodbury Middle School (WMS).  Lopez Aff. ¶ 2.  Burcar also supervised an after-school archery program.  Compl. ¶ 10.

In August 2010, WMS Principal Karin Lopez ordered Burcar to stop supervising the archery program during his "duty days" when he was responsible for supervising detention and completing truancy forms. Ke. Burcar Dep. 97:8-98:7. Moreover, Lopez warned Burcar to promptly record his absences in WMS' electronic system after Lopez discovered that Burcar had failed to do so several times. Lopez Aff. ¶¶ 11-12. Lopez also instructed Burcar to issue truancy diversion letters in a timely fashion and to hold parent meetings. Id. ¶ 22. On several occasions, Burcar failed to do so. Id. ¶ 30. In October 2010, Lopez directed Burcar to assign and supervise detention sessions. Id. Ex. 11. Burcar failed to comply with those directions and left students in detention unsupervised. Lopez Aff. ¶ 32. On several occasions, Burcar failed to inform WMS Attendance Clerk Diana Perkins that students were suspended or assigned detention. Ke. Burcar Dep. 154:21-25. Further, in February 2011, Burcar released a student to an unauthorized adult in violation of WMS policy. Marshall Aff. Ex. A, at 12:5-13:14.

In February 2011, Lopez and Assistant Superintendent Keith Ryskoski began an investigation into Burcar's failure to comply with District policies and follow directions. Lopez Aff. ¶ 33. On February 1, Human Resources Director Denise Griffith and Ryskoski interviewed Burcar about several incidents relating to his failure to follow District policies. Griffith Aff. ¶ 11. On February 23, Lopez and Ryskoski met with Burcar to again discuss various

concerns. Lopez Aff. ¶ 35. Thereafter, Lopez and Griffith continued the investigation. Griffith Aff. ¶ 33. The investigation revealed that Burcar continued to incorrectly record absences and had not fully discontinued involvement with the archery program. Lopez Aff. ¶¶ 38, 48-49. Lopez began preparing a disciplinary letter. Id. ¶ 51.

On February 26, 2011, Burcar provided a doctor's note to Lopez that read, "No work 2/23/11 through 3/25/11."[1] Id. Ex. 67. On March 1, 2011, Lopez left Burcar a voicemail that the note was insufficient to obtain approval for an extended leave of absence. Lopez Aff. ¶ 45. After receiving additional paperwork, the District retroactively approved the leave request and informed Burcar that his leave had been designated as Family and Medical Leave Act (FMLA) leave. Griffith Aff. ¶ 31. Burcar later received extensions of this leave until April 25, 2011, and May 25, 2011. Id. ¶¶ 37-38.

On multiple occasions during his leave, Burcar entered WMS premises without authorization. Lopez Aff. ¶ 52. On May 5, Lopez sent Burcar a letter summarizing the February 23 meeting and raising additional concerns that had surfaced thereafter. Id. Ex.

---

[1] At some point prior to these incidents, Burcar began suffering from depression. Griffith Aff. Ex. 82, at 00048; Ke. Burcar Dep. 32:12-33:14. Prior to his leave, however, Burcar did not explicitly inform the District of his depression, but did mention in February 2011 feeling "overwhelmed" in conversations with administrators. Griffith Dep. 61:12-19.

77. Lopez also directed Burcar to schedule a meeting with her upon the conclusion of his FMLA leave on May 25, 2011. Id. at 00933. Burcar was unable to return at the end of his FMLA leave, but the District allowed him to use accumulated sick leave and vacation time to remain on leave. Griffith Aff. ¶ 43. On May 24, 2011, the District received a doctor's letter detailing Burcar's history of depression.[2] Id. Ex. 111.

On June 6, 2011, Lopez requested a written response from Burcar concerning his presence in the building during his leave and his ongoing failure to follow procedures for requesting and recording absences. Lopez Aff. Ex. 78. On June 7, Burcar's social worker informed the District that he had advised Burcar to enter school buildings during evenings and weekends as a treatment strategy. Griffith Aff. Ex. 112. On June 8, Burcar responded to Lopez through his attorney. Id. Ex. 113. Griffith concluded the investigation and determined with Superintendent Mark Porter that Burcar's conduct justified discharge. Griffith Aff. ¶ 48.

On June 9, 2011, the District placed Burcar on paid administrative leave. Id. ¶ 49. On June 14, Burcar and his doctor submitted a proposed four-week "return-to-work" schedule. Id. Ex. 115, at 01439. On June 17, 2011, after a school board meeting, the District issued a Notice of Proposed Discharge to Burcar. Id. Ex.

---

[2] The letter is dated March 20, 2011, but is stamped "May 24, 2011." Griffith Aff. Ex. 111. Both parties agree that May 24 is the correct date of the letter. See Mem. Opp'n 14.

4

118. Burcar requested arbitration pursuant to the District's collective bargaining agreement. Id. Ex. 119. On December 6, 2011, arbitrator Richard John Miller upheld the discharge, finding that Burcar was insubordinate and had willfully neglected his duties. Id. Ex. 82, at 00056. Burcar did not challenge the decision and his termination was finalized on December 15, 2011. Id. Ex. 80.

On August 13, 2012, Burcar filed suit in Minnesota court, alleging (1) disability discrimination under the Minnesota Human Rights Act (MHRA) and the Americans with Disabilities Act (ADA), (2) MHRA reprisal and (3) violations of the FMLA.[3] The District timely removed, and moves for summary judgment.

## DISCUSSION

### I.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[3] Burcar waived his previously-asserted claims for age discrimination. See Marshall Aff. ¶ 8. As a result, summary judgment on the age discrimination claims is warranted.

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II. Disability Discrimination

Burcar first argues claims for disability discrimination under the ADA and the MHRA.[4] Both statutes prohibit employers from discriminating against individuals because of their disability. See 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08, subdiv. 2. A plaintiff may prevail on a disability discrimination claim either

---

[4] Other than one exception not relevant here, the ADA and MHRA are analyzed under the same standard. See Kammeuller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004).

by presenting direct evidence[5] or by proceeding under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 439 n.4 (8th Cir. 2007). To establish a prima facie case of disability discrimination, a plaintiff must show that (1) he was disabled; (2) he was qualified for the position; and (3) he suffered an adverse employment action due to his disability. See Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003). "To be a qualified individual within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." Brannon v. Luco Mop Co., 521 F.3d 843, 848 (8th Cir. 2008) (citations and internal quotation marks omitted). The burden then shifts to the

---

[5] Burcar argues that the arbitrator's statements about his mental health made during the arbitration proceedings constitute direct evidence of discrimination. The court disagrees. "Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." St. Martin v. City of St. Paul, 680 F.3d 1027, 1033 (8th Cir. 2012) (citation and internal quotation marks omitted). Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias." McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009) (citations omitted). Miller addressed Burcar's mental health only after Burcar raised it as a mitigating factor for his misconduct. See Griffith Aff. Ex. 82, at 00048. The observations at issue related to Burcar's ability to comply with District directives and to video evidence demonstrating Burcar's actions while on leave. These statements do not reflect any discriminatory bias, and the court finds that they are not direct evidence of discrimination.

employer to articulate a legitimate, non-discriminatory reason for the action. Burchett, 340 F.3d at 516-17. "This burden is not onerous." Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 954 (8th Cir. 2012) (citation omitted), cert. denied, 133 S. Ct. 1252 (2013). The plaintiff must then rebut the defendant's justification by presenting evidence that the proffered reason is "pretextual and based on intentional discrimination." Burchett, 340 F.3d at 519 (citation omitted).

### A.   Prima Facie Case

The District argues that Burcar was unable to perform the essential functions of his position with or without reasonable accommodation. Essential job functions are fundamental job duties associated with the position of employment. 29 C.F.R. § 1630.2(n)(1). "[R]egular and reliable attendance is a necessary element of most jobs." Greer v. Emerson Elec. Co., 185 F.3d 917, 921 (8th Cir. 1999) (citations and internal quotation marks omitted). "An employee who is unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones." Pickens v. Soo Line R.R. Co. 264 F.3d 773, 777 (8th Cir. 2001) (alteration in original) (citation and internal quotation marks omitted). "This is true even when the absences are with the employer's permission." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 966 (8th Cir. 2006) (citation omitted). Here, Burcar

8

accumulated a significant number of absences over the course of several months. As a result, without a reasonable accommodation, Burcar was not a qualified individual.

Burcar responds that he could have performed his essential job duties with a reasonable accommodation. Specifically, Burcar argues that his proposed accommodation — working one hour per day and gradually increasing to four hours per day for several weeks, after which he would be "re-evaluated by [his doctor], his therapist and his psychiatrist" — was reasonable. Griffith Aff. Ex. 115, at 01439. The assistant principal position, however, entailed numerous time-consuming responsibilities, including monitoring students and performing various administrative tasks. See Lopez Dep. 69:13-70:23. Burcar did not know if or when he would be able to return to work on a half- or full-time basis. Further, Burcar had already been granted a leave of absence and numerous extensions of leave. See Griffith Aff. ¶¶ 31, 37-38. As a result, the requested accommodation amounted to an indefinite leave of absence and was facially unreasonable under the ADA. See Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 903 (8th Cir. 2009) ("[A]n indefinite leave of absence ... is not a reasonable accommodation under the ADA." (citations omitted)). As a result, Burcar cannot show that he could have performed the essential functions of the job with a reasonable accommodation, and summary judgment is warranted for this reason alone.

**B.   Pretext**

Moreover, even if Burcar could establish a prima facie case of disability discrimination, the District has asserted a legitimate, non-discriminatory reason for his termination. Specifically, the District argues that it fired Burcar for insubordination and willful neglect of his duties. See Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1035 (8th Cir. 2005) (finding violations of city personnel and police department policies to be a legitimate, non-discriminatory justification for termination). As a result, the burden shifts to Burcar to show pretext.

"To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the employment action was false *and* that discrimination was the real reason." Wilking v. Cnty. of Ramsey, 153 F.3d 869, 874 (8th Cir. 1998) (emphasis in original) (citation and internal quotation marks omitted). Burcar first argues that the close temporal proximity between the District discovering his depression and his termination supports a finding of pretext. Timing alone, however, "is usually insufficient to establish that the employer's legitimate non-discriminatory reason for discharge is pretext." EEOC v. Kohler Co., 335 F.3d 766, 773 n.7 (8th Cir. 2003) (citation omitted). As a result, the timing of the termination without more cannot support a finding of pretext.

Burcar next argues that the District's stated reason for the termination is not credible. Specifically, Burcar argues that Griffith did not share his medical diagnosis with the school board and withheld exculpatory evidence. See Mem. Opp'n 27. Here, however, an independent arbitrator reviewed the termination and found that Burcar had engaged in "conduct that harmed or threatened to harm students" and demonstrated "insubordination and/or willful neglect of duties." Griffith Aff. Ex. 82, at 00053, 00056. Such a finding closely tracks the District's proffered legitimate reason and is entitled to significant deference. See Crawford Grp., Inc. v. Holekamp, 543 F.3d 971, 976 (8th Cir. 2008); Villareal v. Indep. Sch. Dist. No. 659, 520 N.W.2d 735, 738-39 (Minn. 1994). As a result, Burcar has not demonstrated a material issue of fact as to whether the proffered reason was pretextual, and summary judgment is warranted.

## III. Failure to Accommodate

Burcar next argues claims under the ADA and MHRA for failure to accommodate his disability. Failure-to-accommodate claims are subject to a modified McDonnell Douglas burden-shifting framework. Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003). "Under the modified burden-shifting approach, the employee must first make a facial showing that he has an ADA disability and that he has suffered [an] adverse employment action. Then he must make a facial showing that he is a qualified individual." Brannon

11

v. Luco Mop Co., 521 F.3d 843, 848 (8th Cir. 2008) (alteration in original) (citation and internal quotation marks omitted). As already explained, however, Burcar cannot demonstrate that he was a qualified individual because he was not able to perform the essential functions of his position with or without reasonable accommodation. As a result, summary judgment is warranted on the failure-to-accommodate claim.[6]

## IV. MHRA Reprisal

Burcar next contends that the District violated the MHRA by taking action against him for requesting accommodation.[7] In the absence of direct evidence, reprisal claims are also analyzed under the McDonnell Douglas burden-shifting framework. See Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 548 (Minn. 2001).

---

[6] Burcar also argues that the failure to participate in an interactive process establishes a prima facie case of disability discrimination. However, "[t]o establish that an employer failed to participate in an interactive process, a disabled employee must show ... the employee could have been reasonably accommodated but for the employer's lack of good faith." Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1021 (8th Cir. 2000) (citation omitted). As already explained, there were no reasonable accommodations available. Moreover, the District has adduced substantial evidence of its efforts to allow Burcar to be absent from work because of his condition. See, e.g., Griffith Aff. Exs. 104-07. As a result, no reasonable jury could find that the District demonstrated bad faith, and any claim premised on failure to participate in an interactive process fails.

[7] Burcar also argues that the District retaliated against him for making a complaint of disability discrimination. Burcar, however, first made such a complaint in 2012, several months after his termination was finalized. As a result, his complaint of disability discrimination cannot support a claim for reprisal.

"Under the MHRA, to establish a prima facie case for a reprisal claim, a plaintiff ... must establish the following elements: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." Bahr v. Capella Univ., 788 N.W.2d 76, 81 (Minn. 2010) (citation and internal quotation marks omitted). The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse action .... If the defendant advances a legitimate reason for the termination, the plaintiff bears the burden of demonstrating the defendant's stated reason is a pretext for retaliation." Macias Soto v. Core-Mark Int'l, Inc., 521 F.3d 837, 841 (8th Cir. 2008) (citations omitted).

The District argues that, even if Burcar could demonstrate a prima facie case of retaliation, it had a legitimate, non-retaliatory reason for terminating him: insubordination and willful neglect of his duties. The burden shifts to Burcar to demonstrate a material issue of fact as to whether the proffered reason is pretextual. As already explained, however, Burcar has not adduced sufficient evidence of pretext, and no reasonable jury could find that Burcar was terminated for any other reason than that proffered by the District. As a result, summary judgment as to the MHRA reprisal claim is warranted.

**V. FMLA**

Under the FMLA, an eligible employee is entitled to twelve weeks of leave during a twelve-month period if he has a "serious health condition that makes [him] unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). "Two types of claims exist under the FMLA: (1) interference ... claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) retaliation ... claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) (citation and internal quotation marks omitted). Burcar argues both interference and retaliation claims.

**A. FMLA Interference**

To state an FMLA interference claim, a plaintiff must show that he gave his employer notice of a need for FMLA leave and that the employer denied an FMLA benefit to which he was entitled. Phillips v. Mathews, 547 F.3d 905, 909-10 (8th Cir. 2008). Burcar argues that the District interfered with his FMLA rights by failing to restore him to the same or an equivalent position following his FMLA leave. See Dollar v. Smithway Motor Xpress, Inc., 710 F.3d 798, 807 (8th Cir. 2013). The FMLA is not, however, a strict-liability statute, and an employer is not liable where the reason for failure to restore an employee is "insufficiently related to

14

FMLA leave." Stallings, 447 F.3d at 1051. Indeed, it is well-settled that the fact that an employee has taken FMLA leave does not insulate him from termination or a decision by the employer not to restore him to his prior or an equivalent position for reasons unrelated to the FMLA. See, e.g., Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 959 (8th Cir. 2012), cert. denied, 133 S. Ct. 1252 (2013). "Therefore, an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised [his] FMLA rights." Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010) (citations and internal quotation marks omitted). The employer bears the burden to show that the alleged interference was insufficiently related to the FMLA leave. See id.

Here, the District argues that it terminated Burcar for insubordination and willful neglect of his duties. Specifically, the District offered substantial evidence that Burcar failed to follow directives from the administration and failed to follow leave procedures. See, e.g., Lopez Aff. Ex. 77. Moreover, these failures were reviewed by a neutral third-party in the arbitration proceedings. See Griffith Aff. Ex. 82; see also Crawford Grp., Inc. v. Holekamp, 543 F.3d 971, 976 (8th Cir. 2008) (noting that arbitrators' decisions are entitled to "an extraordinary level of deference") (citation and internal quotation marks omitted).

15

Termination based on insubordination and neglect of duties is unrelated to FMLA leave. See, e.g., Bacon v. Hennepin Cnty. Med. Ctr., 550 F.3d 711, 715-16 (8th Cir. 2008) (finding termination resulting from failure to comply with employer call-in policy was unrelated to exercise of FMLA leave). As a result, summary judgment is warranted on the FMLA interference claim.

### B.  FMLA Retaliation

Burcar also argues that he was terminated in retaliation for taking FMLA leave. An employer cannot retaliate against an employee for exercising his FMLA rights. McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005). The court again applies a variant of the McDonnell Douglas burden-shifting analysis in the absence of direct evidence of FMLA retaliation.[8] See Smith v. Allen Health Sys., 302 F.3d 827, 832 (8th Cir. 2002). To establish a prima facie claim of FMLA retaliation, Burcar must show that (1) he exercised rights afforded by the FMLA, (2) he suffered an adverse employment action and (3) there is a causal connection between the two. McBurney, 398 F.3d at 1002. The defendant then has the burden to offer a legitimate, non-

---

[8] Burcar argues that the court should infer retaliatory intent from the District's reactions to his request for leave and to his responses to questions about his condition. As explained above, however, direct evidence "most often comprises remarks by decisionmakers that reflect, *without inference*, a [retaliatory] bias." McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009) (emphasis added) (citations omitted). As a result, these examples are not direct evidence of FMLA retaliation and the court proceeds under the McDonnell Douglas framework.

retaliatory reason for the adverse action. Smith, 302 F.3d at 834. The plaintiff must then rebut the defendant's justification by presenting evidence that the proffered reason is pretextual. Id.

Here, even if Burcar could establish a prima facie case of FMLA retaliation, the District has offered a legitimate, non-discriminatory reason for its actions — Burcar's insubordination and willful neglect of his duties following multiple violations of District policies. As already explained, Burcar cannot raise an issue of material fact as to whether this reason is pretextual. While there is a close temporal proximity between Burcar's FMLA leave and his termination, Burcar does not dispute that he violated District policies on multiple occasions. See Griffith Aff. Ex. 82, at 00029. As a result, "the sole fact that [Burcar] was fired at about the same time [he] took [FMLA] leave cannot support an inference of pretext." Smith, 302 F.3d at 834. Thus, Burcar fails to demonstrate that the actions of the District were pretextual. As a result, the court determines that no genuine issue of material fact exists as to whether District retaliated against Burcar for exercising his FMLA rights and summary judgment is warranted on the FMLA retaliation claim.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 22] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 8, 2014

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court